455 S.E.2d 261

James Jimmy JOHNSON, A/K/A Steven J. Johnson

v.

COMMONWEALTH of Virginia.

Record No. 1743–93–4.

Court of Appeals of Virginia,
Alexandria.

March 21, 1995.

50

Peter M. Baskin, Arlington (Pelton, Balland, Young, Demsky, Baskin & O'Malie, P.C., on brief), for appellant.

Kathleen B. Martin, Asst. Atty. Gen. (James S. Gilmore, III, Atty. Gen., on brief), for appellee.

Present: WILLIS, BRAY and FITZPATRICK, JJ.

WILLIS, Judge.

On appeal from his convictions of possession of cocaine, possession of a firearm while in possession of cocaine with the intent to distribute, and possession of a firearm after having been convicted of a felony, James Jimmy Johnson contends (1) that the trial court erred in denying his motion to suppress the evidence on the ground that it was obtained as a result of an unlawful search and seizure, and (2) that the trial court abused its discretion in denying his motion to sever the charge of possession of a firearm by a convicted felon from the other two charges. We affirm on the suppression issue and reverse on the severance issue.

■ On appeal, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Commonwealth v. Grimstead*, 12 Va.App. 1066, 1067, 407 S.E.2d 47, 48 (1991). The findings of the trial court will not be disturbed on appeal unless they are plainly wrong or lack supporting evidence. *Id.* at 1067, 407 S.E.2d at 48.

I.

On January 22, 1993, police officers Hanula and Golab were conducting a surveillance in a known drug area pursuant to information they had received from two reliable informants.

The officers were watching the house of Johnson's girlfriend, Bernetta Parker. The informants had told the officers that Johnson would return from New York in an Oldsmobile, Virginia license number PVO–660, with drugs to sell in Virginia. A Division of Motor Vehicles check disclosed that the car was registered to Elizabeth Dodson.

The informants described Johnson as "a large black male in his 40's with a muscular build, a mustache, and a small tail at the back of his hair." One of the informants identified Johnson by name. A criminal history record check disclosed Johnson's prior felony convictions for sale of narcotics, robbery and burglary.

While watching Ms. Parker's house, the officers saw the Oldsmobile, license number PVO–660, pull into the driveway. Johnson was in the car. The car left and the officers followed it to the Garfield Apartments. The informants had told the officers that Johnson would go there. The officers knew from prior experience that drugs were sold both at Ms. Parker's and at the Garfield Apartments. They had made controlled buys of cocaine at both locations.

On the way to the apartments, the driver of the Oldsmobile, Ms. Dodson, ran a stop sign, but the officers did not stop the car at that time because they were in an unmarked car without emergency equipment. When the car stopped at the apartments, the officers approached it.

As Officer Hanula approached, he saw Johnson, who was a passenger in the front seat, put a blue container in the pocket of a jacket on the seat. Officer Hanula asked Johnson to step out of the car. Hanula told Johnson that he was not under arrest, but thinking it necessary for the officers' safety, Hanula placed Johnson in handcuffs. Johnson is a large, powerfully built man. Because of his size, Hanula found it necessary to link two sets of handcuffs to fit him. Hanula asked Johnson whether he had any drugs or weapons in his possession and whether he could search him. Johnson consented to being searched.

At the same time, Officer Golab asked Ms. Dodson and Ms. Parker to step out of the car. Ms. Dodson consented to a search of her car. In a blue vinyl container in the jacket that Johnson had tossed on the front seat, Officer Golab found a .22 caliber revolver, five live rounds, and extra ammunition.

As Officer Hanula was doing a "pat-down" of Johnson, Officer Golab reported finding the gun. Hearing this, Johnson ran. Officer Hanula caught Johnson and searched him, finding 2.45 grams of cocaine, $413.80 in cash, a razor blade, and a pager.

## II.

Johnson first contends that his being placed in handcuffs upon exiting the vehicle constituted an arrest without probable cause. He argues that because he and his companions were submissive and cooperative, the use of handcuffs was not reasonably necessary to an investigative detention. He argues that the employment of restraint beyond that required for temporary investigation transformed the seizure into an arrest. *See United States v. Beck,* 598 F.2d 497 (9th Cir.1979).

Johnson further argues that the officers lacked probable cause to arrest him because their information was unreliable and uncorroborated. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

In the alternative, Johnson argues that the officers exceeded the permissible scope of a pat-down search for weapons. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An investigative stop must be based on articulable facts supporting a reasonable suspicion that the person detained has committed a criminal offense. *Williams v. Commonwealth,* 4 Va.App. 53, 64, 354 S.E.2d 79, 85 (1987). "[T]he authority to conduct a pat-down search does not automatically accompany an investigative detention." *Williams,* 4 Va.App. at 66, 354 S.E.2d at 86; *see also United States v. Post,* 607 F.2d 847, 851 (9th Cir.1979). Only where the officer can "point to particular facts from which he reasonably inferred that the individual was armed and dangerous" is he justified in

searching for weapons. *Sibron v. New York,* 392 U.S. 40, 63, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968).

Johnson argues that the officers did not have a particularized factual basis for believing that he was armed, in possession of contraband, or had committed any crime. He notes that he was a passenger in a car stopped for a traffic violation and that he was cooperative with the police.

In denying Johnson's motion to suppress, the trial court assumed that placing Johnson in handcuffs effected an arrest for which the informants' information provided probable cause. Alternatively, the court held that if probable cause did not exist, the handcuffs were a reasonable restraint pursuant to a valid *Terry* stop.

■ We hold that the trial court did not err in denying Johnson's motion to suppress the evidence. The police made a valid *Terry* stop.

*Terry* established that police officers may approach a person for the purpose of investigating *possible* criminal behavior even though no probable cause exists for arrest. *Terry* further held that whether the stop was justified is dependent upon whether "the facts available to the officer *at the moment of the seizure* or the search [would] 'warrant a man of reasonable caution in the belief' that the action was appropriate."

*Quigley v. Commonwealth,* 14 Va.App. 28, 32, 414 S.E.2d 851, 853–54 (1992) (quoting *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–81, 20 L.Ed.2d 889 (1968)). Officers Hanula and Golab acted on articulable facts that supported a reasonable suspicion that Johnson was engaged in criminal behavior. Their informants were reliable for two reasons.

First, both informants had previously worked with the police. Both had previously provided information that resulted in arrests and successful prosecutions.

Second, the informants provided detailed, predictive information that the officers were able to corroborate. The officers were able to identify Johnson as a convicted felon. They

confirmed that the addresses given them were places where drugs could be purchased. The described automobile appeared and traveled as predicted.

The officers reasonably assumed that Johnson, probably in possession of illegal drugs, was also probably armed. "Although suspicion of narcotics possession and distribution is not universally recognized as a circumstance which, standing alone, gives rise to an inference of dangerousness, we believe that the better view is that it does." *Williams,* 4 Va.App. at 67, 354 S.E.2d at 87. Thus, the situation confronting the officers justified their conducting a protective search for weapons. *See Sibron,* 392 U.S. at 67, 88 S.Ct. at 1904–05. Furthermore, Johnson consented to the pat-down search.

■ The officers did not exceed the proper scope of the pat-down by placing Johnson in handcuffs. "Brief, complete deprivations of a suspect's liberty, including handcuffing, 'do not convert a stop and frisk into an arrest so long as the methods of restraint used are reasonable to the circumstances.'" *Thomas v. Commonwealth,* 16 Va.App. 851, 857, 434 S.E.2d 319, 323 (1993) (quoting *United States v. Crittendon,* 883 F.2d 326, 329 (4th Cir.1989)). It was dark. Johnson is a large, powerful man. He was suspected of carrying a weapon. Two other people were in the car. Under these circumstances, the officers were justified in taking precaution for their safety. The use of handcuffs was not unreasonable.

### III.

■ Johnson next contends that the trial court abused its discretion in refusing to sever the charge of possession of a firearm after having been convicted of a felony from the charges relating to cocaine possession. We agree.

■ A trial court has limited discretion to order that an accused be tried concurrently for multiple offenses. *See Spence v. Commonwealth,* 12 Va.App. 1040, 1042, 407 S.E.2d 916, 917 (1991).

The court may direct that an accused be tried at one time for all offenses then pending against him, if justice does not require separate trials and (i) the offenses meet the requirements of Rule 3A:6(b) or (ii) the accused and the Commonwealth's attorney consent thereto.

Rule 3A:10(b).

Johnson argues that justice required separate trials in this case, because his prior criminal record, while admissible as an element of the charge of possession of a firearm by a convicted felon, was irrelevant and prejudicial, and thus inadmissible, as evidence with respect to the charges relating to the possession of cocaine. The Supreme Court has held that where evidence of one crime is not admissible in the trial of the others, justice requires separate trials. *See Essex v. Commonwealth,* 228 Va. 273, 287, 322 S.E.2d 216, 224 (1984).

To prove the charge of possession of a firearm after being convicted of a felony, the Commonwealth was required to prove that Johnson was a convicted felon. Thus, with respect to that charge, the trial court was obliged to receive evidence of Johnson's prior criminal record. However, that evidence bore no relevance and had no probative value with respect to the charges relating to possession of cocaine. With respect to those charges, it served merely the purpose of prejudicing Johnson in the eyes of the jury, by suggesting to their minds that he had a criminal propensity.

We hold that the trial court abused its discretion by denying Johnson's motion to sever the charge of possession of a firearm after being convicted of a felony from the other charges. *See Cheng v. Commonwealth,* 240 Va. 26, 33–34, 393 S.E.2d 599, 603 (1990). This denial caused Johnson to be impermissibly prejudiced in his trial on the charges of possession of cocaine and possession of a firearm while in possession of cocaine with the intent to distribute. Therefore, Johnson's convictions on those charges are reversed, and those charges are remanded for retrial, if the Commonwealth be so advised.

The circumstances under which Johnson was stopped and the revolver discovered in his possession are relevant to his

trial for possession of a firearm after having been convicted of a felony. Thus, evidence of those circumstances did not impermissibly prejudice his trial on that charge. Therefore, Johnson's conviction for possession of a firearm after having been convicted of a felony is affirmed.

*Affirmed in part, reversed and remanded in part.*