COURT OF APPEALS OF VIRGINIA


Present: Judge Humphreys, Senior Judges Hodges and Overton
Argued at Chesapeake, Virginia


MART T. HARRIS
                                            OPINION BY
v.    Record No. 0814-99-1          JUDGE ROBERT J. HUMPHREYS
                                         AUGUST 29, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
                      E. Everett Bagnell, Judge

            Barrett R. Richardson (Richardson &
            Rosenberg, L.L.C., on brief), for appellant.

            Amy L. Marshall, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     Appellant was convicted in a bench trial of possession of

marijuana with the intent to distribute and possession of a

firearm after having been convicted of a felony.[1]  On appeal, he

contends the trial court erred in denying his motion to suppress

because the police lacked a reasonable, articulable suspicion to

conduct a pat-down search.  We disagree and affirm his

conviction of possession of marijuana with intent to distribute.

_____

     [1] Appellant was not granted a delayed appeal with regard to
his conviction of possession of a firearm after conviction of a
felony.  Accordingly, our opinion only addresses appellant's
conviction of possession of marijuana with intent to distribute.

## I.  BACKGROUND

Officers J. M. Whitehead and T. B. Shelton testified that they received a radio dispatch relaying information from an unnamed caller that a black male by the name of Mart Harris was selling drugs near the corner of Davis Boulevard and the private road leading into the Cogic Square Apartments, a public housing complex.  The caller also advised that this man was wearing blue jeans, a white T-shirt and a checkered jacket, and that he had a gun.

Upon arriving at the Cogic Square Apartments, the officers observed three men including appellant sitting on a bench and observed that he matched the description and was dressed as described in the dispatch.  Near the bench, there was a bus stop sign and also a sign reading, "No trespassing, No loitering, No drinking."  Officer Whitehead testified that the bench and bus stop were located on a private road belonging to Cogic Square Apartments.

Officer Shelton testified that he approached appellant and asked him his name.  After learning appellant's identity, as a precaution for Shelton's own safety, Shelton patted down appellant because the dispatch mentioned that the suspect was armed and appellant's jacket was loose fitting.  During the pat-down search, Shelton seized a handgun from appellant's left hip area.  Shelton testified that the gun was not visible to common observation.  He also testified that he had worked for

two and one-half years in a drug elimination program at the Cogic Square Apartments, that he knew the residents, and that he had never before seen appellant. Shelton further testified that notwithstanding the bus stop sign, public bus service no longer served the complex.

Appellant testified that he was visiting two friends while at the bus stop and that he was not there to catch a bus. Appellant also testified that he did not know if his friends lived in the apartment complex, and that he did not feel that the "No trespassing" sign applied to him because he had never been banned from the property.

Appellant was placed under arrest for carrying a concealed weapon and trespassing. Appellant was searched incident to his arrest and 3.29 ounces of marijuana were seized from his person.

Prior to trial, appellant made a motion to suppress the evidence against him claiming that it was obtained pursuant to an illegal detention and search. The Commonwealth argued that the stop and search were legal for two reasons. First, before detaining appellant, the officers had obtained and sufficiently corroborated information regarding appellant and his illegal activity from an anonymous informant. Second, the officers reasonably believed appellant was engaging in the criminal activity of trespassing prior to detaining him.

The trial court denied appellant's motion finding that since the officers had confirmed at least two of the four facts

they were given by the informant (appellant's location and his dress) by their own observation before detaining appellant, the officers' detention and search of appellant was proper.

## II.  ANALYSIS

When we review a trial court's denial of a suppression motion, "[w]e review the evidence in a light most favorable to . . . the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence."  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991) (citation omitted).  In our review, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).  However, we consider de novo whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment.  See id.

The issue in this case is the validity of the initial stop and accompanying pat-down, not the arrest or search incident thereto.

Anonymous tips are generally less reliable than tips from known informants and can form the basis for reasonable suspicion only if accompanied by specific indicia of reliability.  See Alabama v. White, 496 U.S. 325, 331 (1990).  During the pendency of this appeal, the United States Supreme Court reiterated the

requirement that there be specific indicia of reliability in an anonymous tip.  See Florida v. J.L., 120 S. Ct. 1375, 1380 (2000).  "The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search."  Id. at 1379 (emphasis added).  Consistent with the U.S. Supreme Court's holding in J.L., in applying Alabama v. White, we have held that although the police do not have to verify every detail provided by an anonymous tipster, "[s]ignificant aspects of the informer's information must be independently corroborated" before a target can be detained.  Bulatko v. Commonwealth, 16 Va. App. 135, 137, 428 S.E.2d 306, 307 (1993).

Notably, in J.L., the Court specifically held that an anonymous tipster's "accurate description of a subject's readily available location and appearance" is not enough to establish that the tipster had knowledge of the target's criminal activity.  The police officers must investigate and determine, before detaining the target, whether the tip is "reliable in its assertion of illegality, not just its tendency to identify a determinate person."  J.L., 120 S. Ct. at 1379.

Here, before detaining the appellant, the officers were only able to determine that the appellant was wearing the clothing described and was in the location given to the police by the anonymous informant.  The officers did not observe appellant engaging in any activity that appeared to corroborate

the tipster's assertion that the appellant was engaged in selling drugs. Thus, under the holding of J.L. and our application of Alabama v. White in Bulatko, we find that the anonymous information communicated to the police officers by the dispatcher was insufficient, standing alone, to provide reasonable suspicion for an investigative detention.

However, we need not dispose of this case on this basis alone. As noted above, the Commonwealth did not rely solely upon the information given by the anonymous informant to support the validity of the officers' detention and search of appellant. The Commonwealth also argues that the evidence is sufficient to support the officers' detention and subsequent search, based upon their independent observation of appellant's criminal activity.

We have held that, as long as the correct reason, along with a factual basis to support it, is raised in the trial court, "[a]n appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason." Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313-14 (1992).

When approached by the officers, appellant was standing on the property of Cogic Square Apartments a short distance from a "No trespassing" sign. Officer Shelton had reason to suspect appellant was a trespasser because of his knowledge of the

residents of the complex gained through two and one-half years in a drug elimination program there.

Code § 18.2-119 provides, in pertinent part, that "[i]f any person shall without authority of law go upon or remain upon the lands, buildings, or premises of another, or any part, portion or area thereof, <u>after having been forbidden to do so . . . [or] by a sign or signs posted . . . he shall be guilty of a misdemeanor</u>." (Emphasis added.)

Here, as we have noted above, under <u>J.L.</u>, the tipster's information could serve as no more than a basis to investigate appellant's activities. There was no "indicia of reliability" to lend the necessary credibility to the anonymous informant's information which would substantiate more than a consensual encounter. Furthermore, any investigation based solely upon the anonymous tipster's information would have had to stop short of any encounter implicating the Fourth Amendment. However, if an investigation either 1) corroborated the anonymous information with the "specific indicia of reliability" required by the holding of <u>J.L.,</u> or 2) provided independent "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot'", a detention for investigative purposes would then be constitutionally authorized. See <u>Reel v. Commonwealth</u>, 31 Va. App. 262, 265, 522 S.E.2d 881, 882 (2000) (quoting <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989)).

In either case, the officers' justification for stopping appellant need not have risen to the level of probable cause, but must have been based upon more than an "inchoate and unparticularized suspicion or 'hunch.'" Terry v. Ohio, 392 U.S. 1, 27 (1968).

Officer Shelton knew that the appellant was not a resident of the housing complex before approaching him.  At that point, he clearly had a reasonable basis to believe that appellant was trespassing on private property.  Thus, this information alone was enough to provide the officers with "reasonable, articulable suspicion the person seized was engaged in criminal activity." Welshman v. Commonwealth, 28 Va. App. 20, 39-40, 502 S.E.2d 122, 127 (1998).  Specifically, the crime of trespassing was implicated.  Accordingly, at that point in time the officers' detention of appellant was constitutionally authorized.

"[W]hen 'evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria.'" Washington v. Commonwealth, 29 Va. App. 5, 15, 509 S.E.2d 512, 517 (1999) (en banc) (citation omitted).  "The test is whether the police methods were calculated to confirm or dispel the suspicion quickly and with minimal intrusion upon the person detained." Id. (citation omitted).

Immediately prior to and following a protective frisk of appellant, both officers continued to question appellant about his status as a resident or guest in the housing complex.  They

conducted themselves in a manner logically designed to quickly confirm or dispel their suspicions, which we find to be reasonable, that appellant was a trespasser.

Although the authority to conduct a pat-down search does not follow automatically from the authority to effect an investigative stop, "[w]here the officer can 'point to particular facts from which he reasonably inferred that the individual was armed and dangerous' [he is] justified in searching for weapons." Williams v. Commonwealth, 4 Va. App. 53, 66, 66-67 354 S.E.2d 79, 86 (1987) (quoting Sibron v. New York, 392 U.S. 40, 64 (1968)).

The anonymous information transmitted to the officers through the police dispatcher included an assertion that the individual identified as Mart Harris was armed with a gun. In addition, the clothing worn by the appellant could have easily concealed a handgun from common observation.

While, as we have held above, the anonymous tipster's information, standing alone, did not support an investigative detention, the officers were not obligated to ignore that information after the appellant had been detained on a basis completely independent of that information. Accordingly, we find that the information concerning the presence of a weapon, when coupled with the corroboration provided by the officers' observation of the other descriptive information conveyed by the

tipster, constituted sufficient reason to suspect that appellant might be armed and justified a pat-down search for weapons.

While reinforcing the requirement of specific indicia of reliability of anonymous information as the basis for reasonable suspicion, the J.L. Court specifically noted that this requirement "in no way diminishes a police officer's prerogative, in accord with Terry, to conduct a protective search of a person who has already been legitimately stopped." J.L., 120 S. Ct. at 1380.

For the above-stated reasons, we affirm appellant's conviction.

Affirmed.